UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN M. HESKETT,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>*Commissioner of Social Security*,<br><br>    Defendant.<br>_____/ | No. C-11-03377-DMR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kathleen Heskett ("Heskett") seeks review of the Social Security Administration's ("SSA") denial of her application for Supplemental Security Income ("SSI") disability benefits. Defendant Commissioner of Social Security ("Commissioner") denied Plaintiff's application after determining that she was not disabled under section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). Both parties filed motions for summary judgment. Having considered the parties' papers and the administrative record, the court hereby GRANTS Defendant's motion and DENIES Plaintiff's motion.

**I. BACKGROUND**

Prior to the present applications, Plaintiff filed multiple applications for disability benefits, which all resulted in a finding of non-disability. On March 23, 2000, she filed an application for SSI benefits, alleging disability since March 19, 1997. (A.R. 157.) The SSA initially denied the application on July 13, 2000, and Plaintiff did not appeal this determination. (A.R. 157.) On April 13, 2004, Plaintiff applied for disability benefits under Title II and Title XVI of the Social Security Act, alleging disability since February 7, 2004. (A.R. 157.) The SSA denied her application on December 22, 2004, and upon reconsideration on March 18, 2005. (A.R. 157.) Plaintiff appealed,

and a hearing was held before Administrative Law Judge ("ALJ") Reite, who, on June 12, 2007, found her not disabled. (A.R. 163-64). He concluded that while Plaintiff's chronic hepatitis C constituted a severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c) (A.R. 157, 160), it was not severe enough to qualify her for benefits because she retained the residual functioning capacity ("RFC") to perform her past relevant work (A.R. 163-64).[1] In the same decision, ALJ Reite also denied Plaintiff's motion to reopen her 2000 application, finding no basis under §§ 404.988(b),[2] 416.1488(b),[3] or 416.1488(c),[4] nor under Social Security Ruling ("SSR") 91-5p.[5] (A.R. 157-58.) On November 27, 2007, the Appeals Council denied her request to review the hearing decision, which made ALJ Reite's decision the final decision of the Commissioner. (A.R. 16.) Plaintiff belatedly sought judicial review of ALJ Reite's decision on February 4, 2008. (A.R. 16.) On June 30, 2008, the parties stipulated to the dismissal of her complaint. (A.R. 16.)

Plaintiff filed her present Title II and Title XVI applications on June 9, 2008, alleging disability beginning on March 1, 2004. (A.R. 16.) She claims an inability to work due to her "hepatitis C, post splenectomy which causes her to be susceptible to extreme periods of infection, major depression, traumatic brain injury mental impairments[,] . . . ongoing ankle issues and some female disorders." (A.R. 17 (citing A.R. 396).) After the SSA denied the application on October 2,

---

[1] ALJ Reite also noted Plaintiff's following medical conditions: a splenectomy, multiple surgical procedures on her left foot, a history of abnormal pap smears, and a history of anxiety and depression. (A.R. 160.) Ultimately, however, he concluded that "none of the above cited medical conditions represent severe impairments." (A.R. 160.)

[2] ALJ Reite noted that "§ 404.988(b) [was] not applicable as [Plaintiff's] prior claim [was] an application for [SSI] benefits only" (A.R. 157), and § 404.988(b) is applicable only to Title II benefits.

[3] He concluded that § 416.1488(b), which has a two-year limitations period, was not applicable because "the date of the notice of the initial determination [was] not within two years of the current application." (A.R. 157.)

[4] ALJ Reite found § 416.1488(c), which permits reopening where a prior determination "was obtained by fraud or similar fault," inapplicable, presumably because there was no record evidence of fraud or similar conduct. (A.R. 157.)

[5] ALJ Reite did not find SSR 91-5p applicable because there was "no indication that claimant 'lacked the mental capacity to understand the procedures for requesting review' or had 'any mental or physical condition which limited claimant's ability to do things for herself.'" (A.R. 157 (quoting SSR 91-5p).)

2008 and upon reconsideration on March 10, 2009, ALJ Kwon held a hearing and ultimately denied Plaintiff's claim on December 16, 2009. (A.R. 16.)

In her decision, ALJ Kwon first concluded there was no "basis for reopening any of the claimant's multiple prior determinations." (A.R. 17.) ALJ Kwon then dismissed Plaintiff's request for hearing as to the Title II application because Plaintiff "had acquired sufficient quarters of coverage to remain insured only through June 30, 2005," which is within the period adjudicated by ALJ Reite. (A.R. 17.) Thus, the majority of the ALJ's opinion addressed only Plaintiff's Title XVI application in the context of the relevant time frame of June 13, 2007 onward.[6]

Turning to the Title XVI claim, ALJ Kwon found Plaintiff not disabled due to the presumption of continuing non-disability that arises from a prior denial. (A.R. 16 (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)).) Nevertheless, she also performed the full five-step analysis provided under § 416.920(a) to determine that Plaintiff was not disabled from June 13, 2007 onward. (A.R. 19-26.) On January 14, 2011, Plaintiff requested that the Appeals Council review ALJ Kwon's decision. (A.R. 11-12.) The Appeals Council denied Plaintiff's request on May 11, 2011 (A.R. 1-6), which made ALJ Kwon's decision the final decision of the Commissioner. *See* § 404.957(c)(1). Plaintiff appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g).

The parties now cross-move for summary judgment. In her motion, Plaintiff alleges that ALJ Kwon: (1) denied her request to reopen her 2000 application in a "conclusory fashion and without due consideration of applicable criteria;" (2) failed to develop an adequate record and, thus, based her decision on inadequate medical evidence; and (3) erred by discrediting various evidence,

---

[6] ALJ Kwon erroneously asserts that the "relevant period at issue" begins on June 9, 2008, the date Plaintiff applied for Title XVI benefits. (*See, e.g.*, A.R. 17, 68.) ALJ Reite's decision adjudicated a period up to June 12, 2007. (A.R. 17.) Thus, the relevant time frame for purposes of ALJ Kwon's decision starts on the date following that decision, June 13, 2007. *See Smith v. Astrue*, No. 09-02303 SI, 2010 WL 3184495, at *5 (N.D. Cal. Aug. 11, 2010) ("As to the prior 'adjudicated period,' July 1998 through November 2004, the prior ALJ determination is *res judicata* . . . . Therefore, the only issue before the Court is the ALJ's December 2008 determination as to the 'unadjudicated' period, *i.e.,* the time since the prior determination."). Despite this error, throughout her opinion, ALJ Kwon takes into account and addresses all relevant evidence in the record that postdates ALJ Reite's decision. Thus, any error was harmless. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

including Plaintiff's testimony, Plaintiff's mother's testimony, and medical reports submitted by Plaintiff's treating physicians and therapist. (*See generally* Pl.'s Summ. J. Mot.)

## II. STANDARD OF REVIEW

The court will uphold an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

## III. DISCUSSION

### A. Reopening Plaintiff's 2000 Application

Plaintiff alleges that ALJ Kwon denied her request to reopen her 2000 application pursuant to SSR 91-5p in a "conclusory fashion and without due consideration of applicable criteria." (Pl.'s Summ. J. Mot. 1.) She contends that although she requested that ALJ Kwon determine whether there was "good cause [under SSR 91-5p] to toll the time to file an appeal for [Plaintiff's] unappealed [2000] claim," ALJ Kwon failed to properly decide the issue. (Pl.'s Summ. J. Mot. 1-2.)

Ordinarily, a claimant has sixty days from the date she receives notice of a SSA denial to request reconsideration of that decision. § 416.1409(a). As an exception to this general rule, SSR 91-5p provides that a claimant may establish good cause to warrant reopening of a previously denied application, "regardless of how much time has passed," if she proves that: (1) her mental incapacity prevented her from timely requesting review and (2) that she had no legal representation at the time. SSR 91-5p; *accord Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) ( "The claimant will have established mental incapacity . . . when the evidence establishes that he or she lacked the

mental capacity to understand the procedures for requesting review.") (citation and quotation marks omitted).

ALJ Kwon incorporated by reference ALJ Reite's findings from his 2007 opinion. (*See* A.R. 17 ("[A]s in the decision dated June 12, 2007, the undersigned does not find a basis for reopening any of the claimant's multiple prior determinations.").) In his opinion, ALJ Reite concluded that while Plaintiff "was treated with Ativan for anxiety and depression, . . . [t]here is no indication that claimant 'lacked the mental capacity to understand the procedures for requesting review' or had 'any mental or physical condition which limited claimant's ability to do things for herself.'" (A.R. 157 (quoting SSR 91-5p).)

The court finds ALJ Kwon's refusal to reopen Plaintiff's 2000 application is based on substantial evidence. Plaintiff does not allege mental incapacity in her current motion, nor has she provided sufficient evidence in the record establishing her mental incapacity. As such, ALJ Kwon properly denied the reopening of Plaintiff's 2000 application under SSR 91-5p. *See Vitt v. Astrue*, No. 06-7184, 2008 WL 425936, at *6 (N.D. Cal. Feb. 14, 2008) ("Plaintiff had not met her burden of proving a mental impairment severe enough to preclude her from understand her rights with respect to the [r]econsideration [d]etermination.") (citation and quotation marks omitted).

### B. Adequacy of the Record

Plaintiff contends that ALJ Kwon could not make a determination as to her disability because Plaintiff did not undergo a consultative examination. (Pl.'s Summ. J. Mot. 8.) Despite the fact that Plaintiff failed to attend any of the examinations scheduled by the SSA, she argues that ALJ Kwon had a duty to further develop the record by requiring a consultative examination. (Pl's Summ. J. Mot. 8.)

Before a disability case reaches an ALJ, the SSA makes its own determination as to the claimant's disability status. §§ 416.1402, 416.1429. In making this determination, the SSA may ask a claimant to undergo additional examinations or tests, including consultative examinations scheduled and paid for by the SSA. *See* § 416.917. The SSA may deny a claimant's application for benefits if she fails to attend a scheduled examination. *See* §§ 416.916, 416.918(a).

In the present case, after contacting Plaintiff's medical sources, the SSA determined that "[t]he information . . . was insufficient to make a medical determination" as to Plaintiff's disability status. (A.R. 179.) The SSA therefore scheduled multiple consultative examinations, which Plaintiff did not attend. (A.R. 179.) Plaintiff's attorney objected to each examination on different grounds. (A.R. 354-57, 381-83.) In one letter, Plaintiff's attorney contended that consultative examinations are "'not the preferred way to obtain medical information.'" (A.R. 23 (quoting A.R. 382).) He claimed that under § 404.1519h, "the treating doctor is the preferred source of medical information," and since Plaintiff's treating physician had already performed a "complete examination," that Plaintiff could provide that report to "save[] [the] agency and Social Security valuable funds." (A.R. 383.) In a different letter, Plaintiff's attorney objected to another consultative examination, contending that "[t]he examinations are very brief, often lasting only 10 minutes or less" and that "[t]he doctor does not have any idea what the claimant's alleged disability is nor any medical history or records to review prior to the examination." (A.R. 354.) Because Plaintiff did not attend any of the scheduled examinations, the SSA informed her that there was "insufficient evidence to find [her] disabled," and therefore, it denied Plaintiff's application for benefits. (A.R. 179.)

Plaintiff appealed the SSA's decision to an ALJ, and now asserts that ALJ Kwon "[c]ommitted [r]eversible [e]rror [i]n [f]ailing [t]o [o]rder [a] [c]onsultative [e]xamination." (Pl.'s Summ. J. Mot. 8.) She claims that "the record is devoid of any RFC assessments from any physicians" and, as such, there was insufficient evidence for ALJ Kwon to make a finding of non-disability. (Pl.'s Summ. J. Mot. 8.)

Although it is the claimant's burden to prove she is disabled, an ALJ "has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). An ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459-60 (citation omitted); *accord Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (recognizing duty to further develop record when medical evidence is insufficient). However, an

ALJ may deny disability benefits altogether when a claimant fails to provide a "good reason" for missing a consultative examination. *See* § 416.918(a). Examples of "good reasons" for failing to appear at a consultative examination include:

> (1) Illness on the date of the scheduled examination or test;
> (2) Not receiving timely notice of the scheduled examination or test, or receiving no notice at all;
> (3) Being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination or test, or;
> (4) Having had death or serious illness occur in your immediate family.

§ 416.918(b). In assessing whether the claimant has established good reason, the Commissioner must also consider the claimant's "physical, mental, educational, and linguistic limitations." § 416.918(a).

After reviewing the justifications put forth by Plaintiff's attorney, ALJ Kwon concluded that "the claimant has not provided a good reason for failing to attend the consultative examinations." (A.R. 25.) She further concluded that Plaintiff's failure to attend the examinations without good reason "affords an opportunity to find the claimant not disabled" under § 416.918(a). (A.R. 25.)

The court affirms ALJ Kwon's conclusion that Plaintiff failed to provide good reason for refusing to attend the consultative examinations. Plaintiff's argument that consultative examinations and medical evidence should come from a claimant's treating physician do not reflect regulatory requirements. Rather, the regulations provide the SSA with discretion when deciding who will evaluate a claimant. *See Arago v. Astrue*, No. 10-16538, 2011 WL 5289469, at *1 (9th Cir. Nov. 4, 2011) ("Contrary to [plaintiff's] contentions, the regulatory scheme does not require that a treating physician perform the consultative examination."); § 416.912(e); § 416.919h. Furthermore, Plaintiff's assertion that her own medical "records should be sufficient" to make a disability determination is also not good reason to refuse to attend the consultative examinations. *Carpenter v. Astrue*, No. 09-01409 JSW, 2010 WL 841281, at *4 (N.D. Cal. Mar. 10, 2010). To the extent that Plaintiff's justifications for refusing to attend the consultative examinations rest on the notion that the examinations are generally "very brief" and that the examining physician would have no time to review Plaintiff's medical records prior to the examination, the court finds these arguments speculative and too generalized to constitute good reason. *See* § 416.918(b) (listing examples of

good reasons to miss consultative examinations). Given that the record demonstrates the SSA ordered several consultative examinations and that Plaintiff objected to each without good reason, the court finds that ALJ Kwon fulfilled her duty to develop the record. *See, e.g.*, *Cornell v. Astrue*, 764 F. Supp. 2d 381, 392 (N.D.N.Y. 2010) (finding ALJ fulfilled his duty to develop record where consultative examinations were scheduled, but plaintiff was unwilling to travel to attend them and declined to do so after being informed that "her non-compliance with the request would result in a decision based upon the evidence already in her file"). Furthermore, the court affirms ALJ Kwon's conclusion that Plaintiff's refusal to attend the consultative examinations is an independent basis to deny her benefits, as it supported by substantial evidence in the record and in accordance with law.

### C. ALJ Kwon's Finding of Non-Disability

Plaintiff contends that she provided sufficient evidence to rebut the presumption of continuing non-disability that arose from ALJ Reite's prior determination. Specifically, she claims that ALJ Kwon recognized only Plaintiff's hepatitis C as a severe impairment and failed to recognize Plaintiff's other impairments, including her "mental impairments of post-splenectomy[,] major depression[,] . . . traumatic brain injury . . . , ongoing ankle issues, and some female disorders." (Pl.'s Summ. J. Mot. 3.) Plaintiff asserts that the "combination of [these] impairments is disabling." (Pl.'s Summ. J. Mot. 3.) She also alleges that ALJ Kwon failed to recognize the worsening of Plaintiff's hepatitis C condition, which constituted a changed circumstance that would have allowed her to rebut the presumption of continuing non-disability. (Pl.'s Summ. J. Mot. 4.)

#### 1. The Presumption of Continuing Non-Disability

When a claimant reapplies for benefits based on the same impairments assessed in a previously denied claim, the ALJ in the latter case applies the former ruling and presumes the claimant is not disabled. *See Chavez*, 844 F.2d at 693. This presumption of non-disability serves as the SSA's equivalent of collateral estoppel. *See id.* To overcome this presumption, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* The Ninth Circuit has explained that "[t]he claimant need not . . . demonstrate that his medical or psychiatric condition has worsened to show changed circumstances. Other changes suffice[,] . . . [f]or example, a change in claimant's age category . . . [or] where the claimant raises a new issue, such as the existence of an

impairment not [previously] considered." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996) (citations omitted). If the claimant fails to prove changed circumstances, the ALJ will find her non-disabled with respect to any subsequent unadjudicated period of alleged disability. *See id.*

Plaintiff claims that she has presented sufficient evidence to show "changed circumstances" and rebut the presumption of continuing non-disability that arose from ALJ Reite's 2007 determination. She asserts that her various conditions, when combined, constitute a new and severe impairment that ALJ Kwon failed to recognize. (Pl.'s Summ. J. Mot. 3.)

Contrary to Plaintiff's contentions, ALJ Kwon adequately recognized and addressed each of Plaintiff's impairments and properly found that Plaintiff failed to prove changed circumstances. The ALJ stated, "[t]he claimant . . . alleges 'hepatitis C, post splenectomy which causes her to be susceptible to extreme periods of infection, major depression, traumatic brain injury mental impairments[,] . . . ongoing ankle issues and some female disorders' . . . . Review of [ALJ Reite's previous] decision documents that the same allegations were considered," (A.R. 17 n.1 (quoting A.R. 396)), since "the majority of the alleged impairments stem from a splenectomy performed in 1980 and a car accident in 1988, both of which occurred over [twenty] years ago." (A.R. 19-20.) She found that Plaintiff failed to establish that any of these conditions were severe enough to "impose functional limitations as defined by the Social Security Act . . . and regulations." (A.R. 19.) ALJ Kwon also noted that since ALJ Reite's decision, Plaintiff remained in the same age category and that "substantial evidence fail[ed] to support a worse impairment or an additional condition." (A.R. 16-17.) Finally, she found that the "new evidence is largely duplicative or, if new, unremarkable," and so did not warrant a finding of changed circumstances, as "the record reveal[ed] that the claimant's allegedly disabling impairments were present at approximately the same level of severity" as Plaintiff's previous applications. (A.R. 17, 24.)

### 2. The Medical Evidence and Changed Circumstances

#### a. Depression and Traumatic Brain Injury

With respect to Plaintiff's allegations of depression and traumatic brain injury, the court finds that substantial evidence supports ALJ Kwon's finding that these conditions are not severe impairments that constitute changed circumstances. In reference to Plaintiff's "major depression,"

the ALJ properly recognized that ALJ Reite considered the condition and that he made a finding of "no severe mental impairment." (A.R. 19, 160.) To the extent Plaintiff asserts that ALJ Kwon failed to address her "history of treatment with anti-depressants" (Pl's Summ. J. Mot. 4-5), the court finds that the ALJ did not err because she correctly noted that "there is no evidence [in the record] of the use of any medications designed to treat psychiatric or mental symptoms." (A.R. 24.) While Plaintiff provided evidence of her anti-depressant use to ALJ Reite, she did not provide any such evidence for the current application. In addition, ALJ Reite had addressed Plaintiff's history with anti-depressants and concluded that her condition did not constitute a severe impairment as Plaintiff told a psychiatric consultative evaluator, "I don't have a mental illness. Sometimes I feel depressed but it is not a big deal." (A.R. 160.)

Ultimately, the only new medical evidence Plaintiff presented to support these mental impairments were two reports prepared by Dr. Carl Combs, Ph.D. (A.R. 19.) In a May 2009 form report, Dr. Combs, a "[l]icensed marriage and family therapist," wrote that Plaintiff "had a traumatic brain injury that affected her response time, memory and depression." (A.R. 23 (citing A.R. 623-25).) He reported that Plaintiff's "brain patterns indicate[d] multi areas of difficulty, [including] memory problems, chronic anxiety, [and] emotional volubility." (A.R. 23 (citing A.R. 623).) In November 2009, he performed a physical RFC assessment of Plaintiff and assessed that "claimant could engage in less than sedentary activity." (A.R. 23 (citing A.R. 673-76).) ALJ Kwon gave "[n]o weight" to Dr. Combs' "*physical* assessments since he is not an acceptable source with respect to the claimant's physical impairments and provided no medical findings, signs, or objective medical evidence to support such." (A.R. 23-24 (citing § 416.913(a)).) As to Dr. Combs' mental assessments of Plaintiff, ALJ Kwon concluded that "[g]reater than limited weight . . . is not warranted in light of the dearth of supportive treatment records for his opinions." (A.R. 24.)

The court affirms ALJ Kwon's decision to reject Dr. Combs' physical assessment of Plaintiff because Dr. Combs' physical assessment was not supported by any other medical evidence in the record. *See Escutia v. Astrue*, No. 10-0477, 2012 WL 396639, at *9 (E.D. Cal. Feb. 7, 2012) (finding "the failure to provide clinical or diagnostic support for an [other source] opinion [to be a] legitimate reason for discounting [such an] opinion.") (citations omitted); § 416.913(d) (establishing

that therapist is not "acceptable medical source," but rather is "[o]ther source[]," whose opinions may support severity of impairment, but cannot alone establish impairment's existence); SSR 06-03p ("Information from . . . 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose.").  Furthermore, Dr. Combs' reports conflicted with the other medical evidence in the record.  For example, a September 2009 medical report from Dr. Annemieke De Lange, M.D., states that Plaintiff had "been out of care for years," that she did not complain of severe physical impairments, and that she did not take any medication to treat her alleged conditions.  (A.R. 23 (citing A.R. 669-71).)  To the extent there was conflicting medical evidence in the record, ALJ Kwon properly discounted Dr. Combs' opinion.  *See, e.g.*, *Santiago v. Barnhart*, 278 F. Supp. 2d 1049, 1059 (N.D. Cal. 2003) ("[A]s [claimant's treating therapist] is not a medical doctor or a licensed psychologist, his opinion is not entitled to the deference accorded 'accepted medical source[s].'").  Furthermore, assuming *arguendo* that Plaintiff's physical capabilities were ambiguous, ALJ Kwon properly resolved the ambiguity by concluding Plaintiff was not disabled.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") (citation omitted).

The court also affirms ALJ Kwon's decision to give limited weight to Dr. Combs' assessment of Plaintiff's mental impairments.  Despite his contentions that Plaintiff suffered from major depression and a "traumatic brain injury," there is no other medical evidence in the record to substantiate these impairments.  *See Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) ("The existence of emotional disorder, however, is not *per se* disabling . . . . [T]here must be proof of the impairment's disabling severity") (citations and quotation marks omitted); SSR 06-03p.  Furthermore, ALJ Kwon did not wholly dismiss Plaintiff's history of mental impairments.  Rather, she recognized that Plaintiff suffered from various mental conditions, took them into account when assessing Plaintiff's disability status, and ultimately concluded they did not constitute a "severe impairment," especially given the lack of supporting medical evidence.  (*See* A.R. 20-21, 24).  Finally, although Dr. Combs concluded that Plaintiff suffered from depression, he did not recommend treatment for it.  Pursuant to the factors enumerated in SSR 06-03p, the court finds that

11

ALJ Kwon's limited consideration of Dr. Combs' opinion was proper. *See Santiago*, 278 F. Supp. at 1059 (concluding ALJ made a proper finding of non-disability "because there was no [acceptable] medical source reflecting [claimant's] alleged severe mental impairment."). She thus properly found that Plaintiff's alleged brain injury and depression did not constitute a changed circumstance.

### b. Plaintiff's "Ankle Issues"

As to Plaintiff's "ankle issues," the ALJ found that the condition "is only mentioned historically in the medical evidence." (A.R. 19 (citing A.R. 423-506).) She noted that any residual ankle issues were resolved in 1999 when Plaintiff underwent a successful skin graft. (A.R. 19.) ALJ Reite also addressed Plaintiff's ankle issues and determined this condition did not constitute a disability. (A.R. 160.) Furthermore, the only new medical evidence on Plaintiff's ankle consists of two "progress notes" from February and March 2008, in which Plaintiff's treating physician, Dr. Ilona Letmanyi, M.D., noted Plaintiff's complaint of "stiff joints" and ordered an "arthritis panel." (A.R. 508-09.) These notes are insufficient to establish the severity of Plaintiff's alleged condition. In addition, while a February 2008 laboratory report "indicated that the claimant had a high [Rheumatoid Arthritis Factor ("RF")], [the report also] noted that hepatitis can give a false positive RF." (A.R. 23 (citing A.R. 523).) Thus, while the medical evidence as to severity of Plaintiff's ankle issues could possibly be characterized as ambiguous, as mentioned previously, it is within the ALJ's discretion to resolve ambiguities in the medical evidence. *See Tommasetti*, 533 F.3d at 1041. The court thus finds that ALJ Kwon's determination that Plaintiff's "ankle issues" did not constitute a changed circumstance is supported by substantial evidence.

### c. Plaintiff's Susceptibility to Infection and Her "Female Disorders"

ALJ Kwon found that "[w]ith respect to [Plaintiff's] alleged compromised immune system and abnormal pap smears, no direct evidence, let alone new evidence, supports that these conditions would impose any functional limitation." (A.R. 19.) Apart from Plaintiff's 1980 splenectomy, the record is devoid of any other medical evidence that references Plaintiff's alleged susceptibility to infection. Furthermore, "claimant was not taking any medications" for any alleged infection, nor for any other condition. (A.R. 23, 24.) Finally, "[a] physical examination in September 2009 was unremarkable; the claimant's two main concerns seemed to be trying treatment for hepatitis C and

urinary incontinence with laughing and sneezing." (A.R. 23 (citing A.R. 669-71).) In reference to Plaintiff's "female disorders," while 2008 medical records indicate findings of pelvic pain, an ovarian cyst, and lumps in her breasts (A.R. 640), Plaintiff suffered from these conditions as early as 2005 (A.R. 475, 497, 634, 636-39). In addition, Plaintiff did not complain of or mention these issues in her 2009 "well woman exam" with Dr. De Lange. (A.R. 669.) As ALJ Kwon noted, Dr. De Lange's report stated that Plaintiff was not taking any medications and that her only concerns were in regard to retrying treatment for her hepatitis C and urinary incontinence. (A.R. 23 (citing A.R. 669-71).) Finally, despite Plaintiff's complaint of irregular pap smears, Dr. De Lange noted that her last pap smear was "normal." (A.R. 669.) The court thus finds that substantial evidence supported ALJ Kwon's conclusion that Plaintiff failed to establish changed circumstances as to her susceptibility to infection and "female disorders."

### d. Plaintiff's Hepatitis C

Plaintiff also contends that her hepatitis C condition had worsened enough to show changed circumstances. (Pl.'s Summ. J. Mot. 4.) She claims that "[t]here was a substantial significant increase in viral load after 2007 reflected in the record" which ALJ Kwon did not address, specifically referencing a laboratory report indicating a "Hepatitis C Quantitation" of 1,794,660. (Pl.'s Summ. J. Mot. 4.) While the court agrees that ALJ Kwon failed to address this evidence, neither the laboratory report nor any subsequent medical opinion or report discusses the significance of this figure. As such, ALJ Kwon could not assess the relevance of the medical data to Plaintiff's hepatitis C condition. *See Associated Elec. Coop., Inc. v. Hudson*, 73 F.3d 845, 849 (8th Cir. 1996) (recognizing it is "physician's function to interpret medical data," not ALJ's) (citation omitted); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]n ALJ is simply not qualified to interpret raw medical data in functional terms.") (citation and quotation marks omitted). Furthermore, subsequent medical records do not corroborate a worsening of Plaintiff's hepatitis C, undermining the possibility that the laboratory report established Plaintiff's worsening condition. (*See, e.g.*, A.R. 669 (September 2009 medical report indicating that Plaintiff had been out of care for years and that the last [three] appointments were "no shows" ).)

Assuming, *arguendo*, that this medical evidence did indicate a worsening of Plaintiff's condition, the court finds harmless error in the ALJ's failure to address it, *see Booz*, 734 F.2d at 1380, because the Commissioner has independent legal grounds to deny Plaintiff benefits based on her failure to attend the scheduled consultative examinations, as discussed above in Section B. The court finds that substantial evidence supports the ALJ's determination that Plaintiff failed to establish a worsening of her hepatitis C condition.

The court thus finds that ALJ Kwon properly considered and addressed all of the relevant medical evidence in the record and properly found Plaintiff not disabled because she failed to rebut the presumption of continuing non-disability.[7]

### 3. Lay Testimony and Changed Circumstances

In assessing Plaintiff's disability status, ALJ Kwon also allegedly failed to give adequate weight to the lay evidence in the record, including Plaintiff's testimony and the testimony of Plaintiff's mother.

#### a. Plaintiff's Testimony

Plaintiff alleges that ALJ Kwon did not properly consider her own testimony as to her symptoms. (Pl.'s Summ. J. Mot. 13.) She contends that the ALJ used "boilerplate" language, instead of "actual and individualized analysis" to reject her statements. (Pl.'s Summ. J. Mot. 13.)

An ALJ cannot make a finding of disability based solely on a claimant's subjective complaints of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 343-44 (9th Cir. 1991). Rather, a claimant must produce objective medical findings of her claimed disability. *Id.* at 344. However, "a claimant need not present clinical or diagnostic evidence to support the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citation omitted). While an ALJ may reject a

---

[7] Plaintiff also contends that ALJ Kwon failed to give proper weight to the March 2006 and May 2007 reports of her treating physician, Dr. Jeffrey Y. Hergenrather, M.D. (Pl.'s Summ. J. Mot. 9-10.) In those reports, Dr. Hergenrather found that Plaintiff was disabled and that she could engage in less than sedentary activity. (A.R. 23 (citing A.R. 425-27).) However, ALJ Kwon properly discounted this evidence because ALJ Reite already considered and rejected it, finding that "both of Dr. Hergenrather's opinions are brief and conclusory without any supporting clinical findings or treatment notes." (A.R. 23 (citing A.R. 163).) Furthermore, ALJ Reite noted that "Dr. Hergenrather sees claimant only once a year, apparently for the sole purpose of documenting the need for medical marijuana." (A.R. 23 (citing A.R. 163).) Thus, ALJ Kwon did not err in rejecting Dr. Hergenrather's opinions as to Plaintiff's medical impairments.

claimant's pain testimony on grounds that the claimant was not credible, he must support this rejection by clear and convincing evidence. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). When assessing the credibility of a claimant's pain testimony, the ALJ should look to several factors, including:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
> 3. Type, dosage, effectiveness, and adverse side effects of any pain medication;
> 4. Treatment, other than medication, for relief of pain;
> 5. Functional restrictions; and
> 6. The claimant's daily activities.

*Bunnell*, 947 F.2d at 346 (quoting SSR 88-13). The ALJ can use these factors to discredit the claimant's allegations. For example, if a claimant can perform household chores and other activities that involve similar physical tasks as a job, the ALJ may conclude that the claimant's pain does not prevent her from working. *Id.*

ALJ Kwon did not find Plaintiff's subjective allegations about the severity of her pain credible. (A.R. 22.) In the hearing, Plaintiff testified that "she can sit for no more than two hours, . . . that severe swelling incapacitates her, as do headaches [and] nausea, [but] that she only takes over-the-counter medications." (A.R. 22.) Although ALJ Kwon found that Plaintiff's hepatitis C condition "could reasonably be expected to cause some of the alleged symptoms," she ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (A.R. 22.)

ALJ Kwon carefully considered the evidence in making this determination. She found that although the record revealed that Plaintiff "has received some treatment for the allegedly disabling impairments, that treatment has been inconsistent, and essentially routine or conservative in nature." (A.R. 24.) Specifically, she noted that Plaintiff "does not take any kind of [prescribed] medication[]" and only occasionally uses over-the-counter medication. (A.R. 24.) She also found that Plaintiff's alleged symptoms were just as severe when the SSA denied her benefits application in 2000. (A.R. 24.) ALJ Kwon noted that Plaintiff worked at that time and inferred that because Plaintiff's "impairments did not prevent [her] from working at that time, . . . [they] would not

1  currently prevent work." (A.R. 24.) Furthermore, the ALJ looked to Plaintiff's daily activities and
2  concluded that "[t]he claimant has described daily activities which are not limited to the extent one
3  would expect, given the complaints of disabling symptoms and limitations." (A.R. 24.) Plaintiff
4  testified that she spends her days shopping, gardening, taking care of her dogs, preparing simple
5  meals, driving short distances, and babysitting her brother's children. (A.R. 24 (citing A.R. 364-
6  79).) The culmination of these factors led ALJ Kwon to find that Plaintiff's testimony was not
7  credible, and the court finds that the ALJ provided clear and convincing reasons for her decision.

### b. Testimony of Plaintiff's Mother

Plaintiff also alleges that ALJ Kwon failed to give proper weight to the testimony of Plaintiff's mother. (Pl.'s Summ. J. Mot. 5, 12-13.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted). Ordinarily, an ALJ must provide specific reasons, "germane to each witness," to reject the testimony of a lay witness. *Id.* (citations and quotation marks omitted). If an ALJ fails to do so, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The Ninth Circuit has articulated three specific bases for upholding an ALJ's disability determination that fails to address third-party testimony. First, if the lay person's testimony is "internally inconsistent," an ALJ can disregard it without reference. *Lockwood v. Comm'r*, 397 F. App'x 288, 291 (9th Cir. 2010). Second, if the ALJ failed to properly assign full weight to third party testimony, there is no reversible error if substantial evidence contradicts the testimony. *See Hart v. Astrue*, 349 F. App'x 175, 177 (9th Cir. 2009). Finally, if the third party testimony does not introduce new evidence and is merely duplicative, the ALJ does not err by failing to evaluate the testimony. *See Zerba v. Comm'r of Soc. Sec. Admin.*, 279 F. App'x 438, 440 (9th Cir. 2008).

Plaintiff's mother, Jean-Marie Heskett ("Jean-Marie"), testified before ALJ Kwon and also submitted a Third Party Function Report and handwritten notes, in which she described Plaintiff's

symptoms and daily activities. (*See* A.R. 71-75, 359-60, 372-79.) She stated that Plaintiff suffers from frequent severe headaches, daily nausea, forgetfulness, depression, fatigue, and night sweats. (A.R. 24 (citing A.R. 359-60).) While ALJ Kwon adequately summarized the evidence submitted by Jean-Marie, she failed to provide specific reasons for rejecting this evidence. (*See* A.R. 24.) However, upon review, Jean-Marie's testimony and reports are unreliable, contradicted elsewhere, and duplicative such that the ALJ's failure to adequately address them does not provide a basis for remand. Jean-Marie contended that Plaintiff's condition has worsened since 2008, however, she also noted that Plaintiff has not seen a doctor for treatment, does not take any medication besides over-the-counter pain medicine, and prefers to "treat[] herself." (A.R. 71-73.) Jean-Marie's testimony and reports are also duplicative of other evidence in the record. For example, Jean-Marie's testimony and Third Party Function Report completely reiterates Plaintiff's own testimony and Function Report. (*See* A.R. 47-70, 341-53.) Both Plaintiff and Jean-Marie describe Plaintiff's condition and symptoms in the same way. For example, they both contend that Plaintiff cannot sit or stand for long periods of time and that she suffers from severe nausea and debilitating headaches. (*See* A.R. 74, 348, 373.) Furthermore, ALJ Kwon adequately considered and addressed Plaintiff's own allegations of her symptoms. Thus, although the ALJ did not state specific reasons for rejecting Jean-Marie's testimony, she effectively did so when she rejected Plaintiff's testimony. Because Jean-Marie's testimony and reports are duplicative of that evidence, no reasonable ALJ would have reached a different conclusion about Plaintiff's disability status by evaluating Jean-Marie's testimony and reports. *See Zerba*, 279 F. App'x at 440 ("Because her husband's testimony was substantially similar to Zerba's own properly discredited testimony, we conclude that no reasonable ALJ could have reached a different result, and any error was harmless.")

**D. ALJ Kwon's Finding of Non-Disability Under the SSA's Five-Step Analysis**

In addition to finding Plaintiff non-disabled under the doctrine of res judicata, the ALJ also found her impairments non-disabling under the SSA's five-step analysis pursuant to § 416.920(a)(4). Under the fourth step of the evaluation process, the ALJ must determine whether the claimant's RFC prevents her from performing past relevant work. § 416.945(a)(5)(i). A claimant's RFC refers to

her capabilities in a work setting despite limitations caused by her medically determinable impairments. § 416.945(a).

Plaintiff contends that ALJ Kwon "lacked sufficient information to make a [RFC] determination." (Pl.'s Summ. J. Mot. 9.) Specifically, she contends that because she did not receive a consultative examination, the ALJ could not make a proper determination as to Plaintiff's functional capacity. (Pl.'s Summ. J. Mot. 9.) Plaintiff's argument fails for the reasons previously set forth in Section III. B. ALJ Kwon did not have a duty to mandate a consultative examination, given that the SSA attempted to schedule several examinations and Plaintiff objected, without good cause, to each. The court thus finds ALJ Kwon properly made a finding of non-disability, supported by substantial evidence in the record.

## IV. CONCLUSION

Based on the foregoing reasons, the court finds that ALJ Kwon's decision supported by substantial evidence in the record and in accordance with law. Accordingly, the court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

IT IS SO ORDERED.

Dated: June 4, 2012



DONNA M. RYU
United States Magistrate Judge